FILED
10-31-2025
Anna Maria Hodges
Clerk of Circuit Court
2025CV009475
Honorable Jean Marie
Kies-45
Branch 45

**STATE OF WISCONSIN**      **CIRCUIT COURT**      **MILWAUKEE COUNTY**

**SCOTT SMITH**
10421 Shelter Grove
Eden Prairie, Minnesota 55437,

        Plaintiff,

v.

**GOLDSTEIN MCCLINTOCK LLLP**
316 North Milwaukee Street
Suite 201
Milwaukee, Wisconsin 53202,

**MATTHEW E. CARLTON**
1900 South 18th Avenue
West Bend, Wisconsin 53095,

**MATTHEW E. MCCLINTOCK**
111 West Washington Street
Suite 1221
Chicago, Illinois 60602,

**AMRIT KAPAI**
66 West Flagler Street
Suite 400
Miami, Florida 33130,

**ABC INSURANCE COMPANY**

and

**DEF INSURANCE COMPANY,**

        Defendants.

Case No:_____
Case Code: 30301, 30303

---

### SUMMONS

---

THE STATE OF WISCONSIN

To each person named above as a Defendant:

You are hereby notified that the Plaintiff named above have filed a lawsuit or other legal action against you. The Complaint, which is attached, states the nature and basis of the legal action.

Within forty-five (45) days of receiving this Summons, you must respond with a written answer, as that term is used in Chapter 802 of the Wisconsin Statutes, to the Complaint. The Court may reject or disregard an answer that does not follow the requirements of the statutes. The answer must be sent or delivered to the Milwaukee County Clerk of Circuit Court, whose address is 901 N. 9th Street, Milwaukee, WI 53233, and to Mallery s.c., Plaintiff's attorneys, whose address is 731 N. Jackson Street, Suite 900, Milwaukee, Wisconsin 53202. You may have an attorney help or represent you.

If you do not provide a proper answer within forty-five (45) days, the Court may grant judgment against you for the award of money or other legal action requested in the Complaint, and you may lose your right to object to anything that is or may be incorrect in the Complaint. A judgment may be enforced as provided by law. A judgment awarding money may become a lien against any real estate you own now or in the future, and may also be enforced by garnishment or seizure of property.

Dated this 31st day of October, 2025.

PLEASE DIRECT ALL
CORRESPONDENCE,
INQUIRIES AND PLEADINGS TO:
731 N. Jackson Street, Suite 900
Milwaukee, WI 53202
Phone: 414-271-2424
Email: afrank@mallerysc.com

MALLERY s.c.
Attorneys for Plaintiffs


By:     *Electronically signed by Andrew Frank*
        Andrew Frank
        State Bar No. 1046021

**EXHIBIT 1**

FILED
10-31-2025
Anna Maria Hodges
Clerk of Circuit Court
2025CV009475
Honorable Jean Marie
Kies-45
Branch 45

**STATE OF WISCONSIN**          **CIRCUIT COURT**          **MILWAUKEE COUNTY**

**SCOTT SMITH**
10421 Shelter Grove
Eden Prairie, Minnesota 55437,

        Plaintiff,

v.

**GOLDSTEIN MCCLINTOCK LLLP**
316 North Milwaukee Street
Suite 201
Milwaukee, Wisconsin 53202,

                                          Case No: _____
                                          Case Code: 30301, 30303

**MATTHEW E. CARLTON**
1900 South 18th Avenue
West Bend, Wisconsin 53095,

**MATTHEW E. MCCLINTOCK**
111 West Washington Street
Suite 1221
Chicago, Illinois 60602,

**AMRIT KAPAI**
66 West Flagler Street
Suite 400
Miami, Florida 33130,

**ABC INSURANCE COMPANY**

and

**DEF INSURANCE COMPANY,**

        Defendants.

---

**COMPLAINT**

---

Plaintiff, Scott Smith, complains against Defendants as follows:

## PARTIES

1.      Scott Smith ("Smith") is an adult resident of the State of Minnesota with an address of 10421 Shelter Grove, Eden Prairie, Minnesota 55437.

2.      Defendant Goldstein McClintock LLLP ("Goldstein") is a national bankruptcy and creditors' rights law firm with attorneys licensed and admitted to practice in multiple states, including in Wisconsin. Goldstein has a local office at 316 North Milwaukee Street, Suite 201, Milwaukee, Wisconsin 53202.

3.      Defendant Matthew E. Carlton ("Carlton") is a duly-licensed attorney who previously worked for Goldstein in its Milwaukee office and acted as legal representation for Smith. Upon information and belief, Carlton has a business address of 1900 South 18th Avenue, West Bend, Wisconsin 53095.

4.      Defendant Matthew E. McClintock ("McClintock") is a duly-licensed attorney who works for Goldstein in its Chicago office and acted as legal representation for Smith. McClintock has a business address of 111 West Washington Street, Suite 1221, Chicago, Illinois 60602.

5.      Defendant Amrit Kapai ("Kapai") is a duly-licensed attorney who previously worked for Goldstein and acted as legal representation for Smith. Upon information and belief, Kapai has a business address of 66 West Flagler Street, Suite 400, Miami, Florida 33130. (Collectively, Goldstein, Carlton, McClintock and Kapai will be referred to as "Goldstein" or "Defendants".)

6.      Goldstein and its attorneys market themselves to the public generally, and marketed themselves to Smith specifically, as having significant expertise in bankruptcy matters. In fact, Goldstein and its attorneys actively market themselves to the public as being "comprised of top

2

professionals with decades of experience . . . . handling all aspects of . . . . bankruptcy, and creditors' rights practice" on the Goldstein law firm website. Goldstein offered, and Smith sought, this purported expertise, as further described below.

7.     Upon information and belief, an unknown insurance company, herein designated pursuant to Wis. Stat. § 807.12 by the fictitious name of ABC Insurance Company, had issued a policy of insurance to Goldstein, which provided coverage to Goldstein and its attorneys, including McClintock, for claims such as those set forth in this Complaint and which policy was in full force and effect at all relevant times.

8.     ABC Insurance Company is a proper party defendant pursuant to Wis. Stat. § 632.24, which allows direct actions against an insurer for professional negligence claims against its insureds.

9.     Upon information and belief, an unknown insurance company, herein designated pursuant to Wis. Stat. § 807.12 by the fictitious name of DEF Insurance Company, had issued a policy of insurance to Carlton, Kapai and/or their respective current employers, which provided coverage to Carlton and Kapai for claims such as those set forth in this Complaint and which policy was in full force and effect at all relevant times.

10.     DEF Insurance Company is a proper party defendant pursuant to Wis. Stat. § 632.24, which allows direct actions against an insurer for negligence claims against its insureds.

## VENUE AND JURISDICTION

11.     This Court has subject matter jurisdiction over this civil matter; personal jurisdiction over Goldstein under Wis. Stat. § 801.05(1) as it has a legal practice, and is engaged in substantial activities, within the State of Wisconsin; and personal jurisdiction over the individual

3

**EXHIBIT 1**

Defendants under Wis. Stat. §§ 801.05(3) and (5) as the acts, omissions and services occurred within the State of Wisconsin.

12.    Venue is appropriate in this County pursuant to Wis. Stat. §§ 801.50(2)(a) and (c) as the claim arose, and Goldstein is located and does substantial business, in Milwaukee County.

## SUMMARY OF CLAIMS

13.    In about April, 2018, Smith retained Goldstein to represent his interests in a bankruptcy action commenced by Smith's former business partner, Gregory Kleynerman ("Kleynerman").

14.    Goldstein failed to adequately and competently represent Smith and his interests, to Smith's detriment and damage.

15.    Goldstein committed multiple acts which violated both common law and contractual duties. As described in the paragraphs below, Goldstein failed to file proper objections at various points during Kleynerman's bankruptcy, among other tortious actions and contractual breaches.

16.    In 2024, the Seventh Circuit Court of Appeals confirmed that Goldstein failed to take various actions, among other errors and omissions, that would have resulted in the recovery of substantial funds owed to Smith as well as the potential recovery of certain ownership interests in the Red Flag company (defined below).

17.    As described in more detail below, Goldstein breached an established common law duty of reasonable care:

> [A]n attorney must be held to undertake to use a reasonable degree of care and skill. and to possess a reasonable extent the knowledge requisite to a proper performance of the duties of his profession, and. if injury results to the client as a proximate consequence of the lack of knowledge or skill, or from the failure to exercise it, the client may recover damages to the extent of the injury sustained.

4

**EXHIBIT 1**

*Olfe v. Gordon*, 186 N.W.2d 573, 576 (Wis. 1980). Failing to file proper objections which impact a client's ability to recover their money judgment, among other breaches of professional duties, is a breach of the reasonable degree of care all attorneys owe their clients.

18.    As described in more detail below, Goldstein's conduct violated a contractual duty between Goldstein and Smith. The engagement letter stated that Goldstein would represent Smith:

> [I]n connection with: (a) potential bankruptcy filing of Gregor [sic] Kleynerman of Milwaukee, Wisconsin; (b) assistance in post-judgment collections of Milwaukee County Case Number 11-CV-18551; and (c) any other legal matters which you ask G&M to perform (for which G&M agrees to provide legal advice with respect to).

Additionally, the engagement letter specifies that Goldstein's representation includes "considering, preparing and working on documents, pleadings and other papers." By failing to make objections crucial to Smith's money judgment and his ability to recover, Goldstein has not provided adequate representation to Smith in connection with Kleynerman's bankruptcy, which is a breach of Goldstein's contractual duty toward Smith.

19.    Smith has been significantly damaged by Goldstein's errors and omissions, including his failure to recover his monetary judgment against Kleynerman, expending significant funds for deficient and substandard legal representation, lost opportunity costs, not to mention the years of time, effort and aggravation that are not compensable.

## FACTUAL ALLEGATIONS

### *Smith Obtains a Pre-Bankruptcy Judgment Against Kleynerman*

20.    In and around 2002, Smith and Kleynerman were equal business partners in a company called Alpha Cargo Technology LLC ("Alpha"), which owned valuable patents, in part developed by Smith, in the field of rail, cargo and container security.

21.    After several transactions orchestrated by Kleynerman, Alpha's valuable patents were transferred to Red Flag Cargo Systems LLC ("Red Flag"), which was another entity owned

**EXHIBIT 1**

and controlled by Kleynerman. These transactions left Smith and Alpha with nothing, and positioned Kleynerman and Red Flag to take full financial advantage of patents developed by Smith.

22.    As a result, Smith sued Kleynerman in Milwaukee County Circuit Court (Case No. 11-CV-18551) alleging breach of fiduciary duties. Smith won. A jury found Kleynerman guilty of breaching his fiduciary duties and awarded Smith $499,000 in damages (the "Judgment"). *See Smith v. Kleynerman*, 2016 WI App 57, 370 Wis. 2d 786, 882 N.W.2d 870. Among other things, the jury determined that Kleynerman acted maliciously toward Smith, and in an intentional disregard for the rights of Smith by intentionally misrepresenting material facts to Smith.

23.    Smith docketed the Judgment, which created a perfected judgment lien on Kleynerman's residence ("Judgment Lien").

24.    After obtaining the Judgment, Smith sought to collect on it, in part, by pursuing Kleynerman's interest in Red Flag. On March 22, 2018, the Honorable Marshall B. Murray, Circuit Court Judge, Milwaukee County, Wisconsin, entered a charging order pursuant to Wis. Stat. § 183.0705 (the "Charging Order"), charging Kleynerman's interest in Red Flag with the payment of the Judgment.

25.    By obtaining the Charging Order, Smith also obtained a perfected lien against Kleynerman's interest in Red Flag ("Charging Lien").

***Kleynerman Files Chapter 7 Bankruptcy***

26.    In part because of the Judgment and Charging Order, on July 9, 2018, Kleynerman filed a Voluntary Petition for Individuals Filing for Bankruptcy ("Petition") under Chapter 7 of the U.S. Bankruptcy Code in the Eastern District of Wisconsin Bankruptcy Court, Case No. 18-26659 (the "Bankruptcy"). In the Petition, Kleynerman said that his debts were primarily business debts.

**EXHIBIT 1**

27.     On July 23, 2018, in his Bankruptcy, Kleynerman filed his initial Schedules identifying his assets and claiming exemptions, and his creditors. [Bankruptcy Doc 9]

28.     On Schedule A/B Property, Kleynerman listed his residence with a value of $585,000 and a 51% ownership interest in Red Flag with a value of $0. On Schedule C: The Property You Claim as Exempt he exempted his interest in Red Flag at $0.00 at 100% of fair market value, up to any applicable statutory limit pursuant to Wis. Stat. § 815.18(3)(b), which allows a debtor to exempt up to $15,000 of an interest held by a debtor in a closely held business. No objection to these exemptions were filed.

29.     On Schedule D: Creditors who have Claims Secured by Priority, Kleynerman listed Smith as a secured creditor with a judgment lien on the residence in the amounts of $585,000 and $15,597, with both amounts in full as an unsecured portion because there was no value left to attach to the residence due to senior lien holders. Kleynerman also listed these same claims on Schedule E/F: Creditors Who have Unsecured Claims in Part 2 for nonpriority claims.

30.     On August 8, 2018, the first Meeting of Creditors was conducted in the Bankruptcy. Goldstein represented Smith at that meeting and filed a Notice of Appearance in the Bankruptcy.

31.     On August 9, 2018, the Bankruptcy Court issued a Notice of Recovery of Assets and Opportunity to File Proof of Claim advising that "the trustee may be able to distribute some funds to creditors" and setting a deadline to file a proof of claim by November 9, 2018.

32.     On September 20, 2018, Goldstein, by Carlton, as attorney for Smith, filed two secured claims in the Bankruptcy.

33.     Goldstein timely filed Proof of Claim 1-1 for Smith and identified that the basis of the claim was "Money Judgment (Milwaukee County 11-CV-18551)" in the amount of $570,168.52, and the claim is secured by a lien on "Real estate" valued at $585,000, with the

7

amount of the claim that is secured being the full amount of the claim, and the basis for perfection "Judgment Lien". The Judgment Lien on the real estate could be, and later was, satisfied by the State Court due to an Order of Satisfaction Due to Bankruptcy filed on October 30, 2024, pursuant to Wis. Stat. § 806.19(4).

34.     Goldstein timely filed Proof of Claim 2-1 for Smith and identified that the basis of the claim was "Money Judgment (Milwaukee County 11-CV-3594)" in the amount of $16,201.90, and the claim is secured by a lien on "Real estate" valued at $585,000, with the amount of the claim that is secured being the full amount of the claim, and the basis for perfection "Judgment Lien". The Judgment Lien on the real estate could be, and later was, satisfied by the State Court due to an Order of Satisfaction Due to Bankruptcy filed on April 26, 2021, pursuant to Wis. Stat. § 806.19(4).

35.     The claims were allowed as neither the amount nor the secured status of Smith's claims were objected to in the Bankruptcy.

36.     On October 9, 2018, Smith initiated an adversary proceeding filing an Adversary Complaint against Kleynerman seeking to have Kleynerman's Judgment debt of $499,000 to Smith found non-dischargeable under 11 U.S.C. § 523(a)(4). (Adv. Case. No. 18-02220-beh, the "Adversary Case"). Kleynerman filed an Answer and Affirmative Defenses in the Adversary Case. Kleynerman did not seek to avoid Smith's Charging Lien. After a trial held on March 18, 2019, the complaint in the Adversary Case was dismissed, however no action to avoid Smith's Charging Lien was filed by Kleynerman.

37.     On March 26, 2019, Kleynerman filed an Amended Schedule C: The Property You Claim as Exempt [Bankruptcy Doc 37] which again valued his 51% ownership of Red Flag at $0.00, and listed his exemption of that amount as "100% of fair market value, up to any applicable

8

**EXHIBIT 1**

statutory limit" pursuant to Wis. Stat. § 815.18(3)(b). This was no change from his prior Schedule C. No objection to these exemptions were filed.

38.    On March 28, 2019, the Chapter 7 Trustee, Steven McDonald (the "Trustee"), filed a Notice of Trustee's Proposed Abandonment [Bankruptcy Doc 38] in which the Trustee estimated Kleynerman's interest in Red Flag had a value of $0.00 and proposing to abandon it from the bankruptcy estate, at which time it would revert back to Smith. Any objection to the Trustee's intended abandonment was noticed to be filed by April 22, 2019.

39.    On April 25, 2019, the Trustee filed a Statement of Abandonment [Bankruptcy Doc 44] advising that after notice and no objections, Smith's assets were abandoned from the bankruptcy estate, including the interest in Red Flag.

40.    On December 12, 2019, an Order of Discharge [Bankruptcy Doc 47] was entered, granting Kleynerman his discharge in Bankruptcy.

41.    On February 25, 2020, Goldstein, on behalf of Smith, filed a Motion for an Order, Pursuant to Bankruptcy Rule 2004 and Local Rule 2004, Authorizing Creditor to Issue Rule 2004 Subpoenas [Bankruptcy Doc 52] ("2004 Motion"). The 2004 Motion asked to examine Kleynerman, two of Kleynerman's new business partners, a major creditor of Kleynerman, a federal agency, and one of its employees about a prior unrelated contract. Objections were filed to the 2004 Motion. On May 25, 2020, the Court issued a Decision and Order Denying Creditor's Motion for Rule 2004 Exam, finding that, "the mischaracterization of the litigation history, the speculative nature of Smith's declaration, the credible nature of the three Red Flag owners' declarations, the questionable lateness of the motion despite Smith's awareness of the contract for at least nine months, and the Court's conclusion that many of the above factors suggest Smith contrived the motion as a harassment device toward debtor in particular, plus the implicit yet

9

informed decision by the Chapter 7 Trustee not to take further action, compels the Court to DENY the movant's request for Rule 2004 examinations of the named entities." On July 28, 2020, an Order Denying Creditor's Motion for Reconsideration [Bankruptcy Doc 91] of the denial of the 2004 Motion was entered.

42.     On December 16, 2020, the Trustee filed the Trustee's Final Report and Trustee's Proposed Distribution [Bankruptcy Document 98] identifying that the $14,500 of gross receipts by the bankruptcy estate would not be distributed to Smith because his claims were "filed as a secured claim". The accompanying Notice of Trustee's Final Report and Application for Compensation and Deadline to Object (NFR) [Bankruptcy Doc 99] ("NFR") was served notifying of an objection deadline within 21 days of the mailing on December 17, 2020.

43.     No objections were filed and on June 23, 2021, the Trustee filed the Chapter 7 Trustee's Final Account and Distribution Report Certification that the Estate has Been Fully Administered and Application to be Discharged (TFR) [Bankruptcy Doc 108] ("TFR").

44.     On August 5, 2021, the Court entered an Order Discharging Trustee and Closing Case. [Bankruptcy Doc 109]

***Proceedings After Abandonment and Discharge***

45.     After the abandonment, and after being told by the Bankruptcy court that he had no recourse in the Bankruptcy matter, Smith waited for Kleynerman to seek the avoidance of this Charging Lien. That avoidance action never came.

46.     Since Kleynerman did not avoid the Charging Lien, and the property had been abandoned, Smith sought to enforce his Charging Lien rights. Smith, by new counsel other than Goldstein, sent a letter to Red Flag on March 19, 2021 (the "Document Letter"), requesting certain financial documents which would disclose whether, and how much, Kleynerman may be owed

**EXHIBIT 1**

from, and had been paid by, Red Flag, which remained subject to the Charging Order. The Document Letter requested Red Flag produce these documents by April 16, 2021.

47.     Instead of responding to the Document Letter, Kleynerman filed an Application for Order of Satisfaction of Judgment(s) Due to Discharge in Bankruptcy (the "Application") with the state court on April 12, 2021. The Application sought the satisfaction of the Judgment and a release of Smith's judgment lien on all of Kleynerman's property, both real and personal, pursuant to Wis. Stat. § 806.19(4).

48.     On April 16, 2021, Smith objected to the Application, arguing that Kleynerman's request was overly broad and beyond the statutory authority granted to the courts by the Wisconsin legislature, which only allows the release of a judgment lien against real property, not personal property.

49.     The state court agreed with Smith by denying the Application to the extent it sought a release of Smith's judgment lien against Kleynerman's personal property, and granting it only to the extent it relates to real property.

*The Value of Kleynerman's Interest in Red Flag Comes to Light*

50.     The state court also ordered Red Flag to produce the 2018, 2019 and 2020 K1s issued by Red Flag to Kleynerman, and Kleynerman's 2018, 2019 and 2020 W2s from Red Flag, in order to determine the net distributions and draws that Kleynerman earned between 2018 and 2020. After receiving the documents, it became clear that Kleynerman's interest in Red Flag was extremely valuable. It was nowhere near the $0.00 both he and the Trustee placed on it during the Bankruptcy. The actual value of Kleynerman's largest asset should have been valued in the millions; certainly not the $0 value stated.

11

**EXHIBIT 1**

51.    After receiving the tax information in state court, Smith engaged an expert forensics accountant to provide an analysis of how much Kleynerman was receiving from Red Flag in distributions, draws and income between 2018 and 2020. It was determined that Kleynerman netted between $910,000 and $1,400,000 in distributions, draws and income from Red Flag *during* his Bankruptcy. None of these Red Flag distributions and draws were included in the Bankruptcy, and none were paid to Smith as the Charging Order required. Goldstein improperly only applied the Judgment Lien in the Bankruptcy claims filed, solely against the value Kleynerman's home and not the Charging Lien.

52.    Given the information gathered in the state court, it also became obvious that Kleynerman had manipulated his Bankruptcy Schedules in order to shield his Red Flag interest, and the income it generated, from his creditors. On his Statement of Financial Affairs, Kleynerman disclosed that he had received $51,012 in wages since January 1, 2018. This means that between January 1 and July 9, Kleynerman was paid $51,012 from Red Flag. The 2018 tax information obtained by Smith in the state court illustrates that between July 10 and December 31, 2018, he was paid another $305,543 from Red Flag (for a total of $356,555 during the year in which the Bankruptcy was filed). He then finished the same year with a total salary near $400,000.

53.    Kleynerman's Statement of Financial Affairs also further substantiate the conclusions of the forensic accountant, Mr. Rodrigues. In 2016, Kleynerman was paid $318,750 from Red Flag. In 2017, Kleynerman was paid $289,025 from Red Flag. Kleynerman's history illustrates that from 2016 to at least 2020 he was routinely receiving approximately $300,000 per year from Red Flag.

54.    Despite the prior income average of approximately $25,000 per month from Red Flag, Kleynerman listed an expectation of only $9,160 monthly income going forward on his

**EXHIBIT 1**

Schedule I [Doc 9, page 24 of 38]. In his response to number 13 on Schedule I regarding an increase of decrease with the year after filing Schedule I, he only "listed termination of garnishment adds $611 to take-home" and did not identify that he would continue to receive at least $25,000 average monthly income going forward. Given the disparity from past years' income, Goldstein should have explored this issue. The actual higher income produced disposable income available for creditors of at least $14,000 per month. The disclosed income was portrayed as being spent on Schedule J [Document 9, page 26 of 38] with a negative available of $1,406 per month and some future expenses needed. But the budget included $1,500 per month for an adult daughter, did not compensate the $611 monthly garnishment that ceased when the bankruptcy was filed. No motion was filed to convert this case to a reorganization to pay the disposable income to creditors.

55.     Again, Kleynerman's interest in Red Flag was worth millions yet ultimately went unchallenged and unexplored, in multiple ways, by Goldstein.

56.     Goldstein never objected to the $0 for Red Flag nor the $15,000 it was amended to (when Kleynerman, upon information and belief, discovered that he needed to consider his exemption for this asset).

### The Value of Kleynerman's Interest in Red Flag is Now Relevant

57.     Despite having actual knowledge of the Judgment and the Charging Lien created by the entry of the Charging Order since March 22, 2018, Kleynerman waited until October 14, 2021 file Debtor's Motion to (I) Reopen the Bankruptcy Case, and (II) Avoid a Judicial Lien on Exempt Personal Property Pursuant to 11 U.S.C. § 522(f)(1)(A) [Bankruptcy Doc 112] to re-open the Bankruptcy to avoid Smith's Charging Lien, the entire premise of which is based primarily on the concept that his interest in Red Flag was worth nothing.

13

58.     On January 26, 2022, the Bankruptcy court entered Decision and Order on Debtor's Motion to Reopen and to Avoid Lien [Bankruptcy Doc 123], granting the request to re-open the Bankruptcy and avoid Smith's Charging Lien because no one challenged Kleynerman's $0.00 valuation, and that Smith represented to the Court "that Smith's judgment was secured by only the debtor's homestead." The Bankruptcy Court specifically points to the fact that Smith did not object to the valuation of Red Flag at $0.

### Kleynerman's Personal Loan

59.     Kleynerman gave himself a personal loan from Red Flag ($350-$390K) prior to his bankruptcy filing and it was not questioned by Goldstein despite Smith raising this issue with Goldstein.  This loan would have been an asset of Red Flag, providing additional value to Kleynerman's interest in Red Flag.

### Kleynerman's Differing Financial Disclosures

60.     The history of this case in its entirety is that there were differing financial disclosures given by Kleynerman in depositions, testimony, and bankruptcy schedules all referring to different incomes, which were never properly questioned or challenged by Goldstein.

### Kleynerman's Business Partner, Bruce Glaser ("Glaser")

61.     Glaser was the largest creditor and on the board of directors of Red Flag.  Glaser assisted in Kleynerman's Bankruptcy. In his Bankruptcy schedules, Kleynerman listed Glaser as having a claim for a judgment lien on the residence, and additional debt in excess of $1.2M for a business loan. Glaser filed a Proof of Claim for an allowed general unsecured claim in the amount of $450,927.57. As the only unsecured creditor with a claim, Glaser received all proceeds of the bankruptcy estate after payment of costs and fees. Glaser's $1.2M debt was never questioned or verified in the Bankruptcy by Goldstein.  Glaser assisted Kleynerman at the assorted hearings and

14

never expressed an interest in questioning Kleynerman or Red Flag to obtain greater payment toward his "debt."

***Defendant's Negligence***

62.     Goldstein failed to object to Kleynerman's designation as a business debtor. Kleynerman's Chapter 7 petition indicated that his debts are primarily business debts. Kleynerman listed a total of $3,234,688 in liabilities, $2,630,688 designated as business debts. One of those business debts was for $1,177,274 to Glaser for a "business loan of $455,450 plus interest." If this were indeed true, then Kleynerman's personal debts would total $1,781,274, meaning Kleynerman would have had to pass the means test. 11 U.S.C. § 707.

63.     Goldstein failed to object to Kleynerman's discharge on October 9, 2018. Goldstein commenced the Adversary Case for nondischargeability under 11 U.S.C. § 523(a)(4), but at no point did Goldstein do so under § 727.

64.     Goldstein failed to file his proofs of claims as unsecured and as secured by any value for the Charging Lien. Goldstein failed to amend the claims to correct them. The deadline for filing proofs of claim was November 9, 2018. Smith filed two proofs of claims: (a) $570,168.52 from a money judgment secured by real estate; and (b) $16,201.90 from a money judgment secured by real estate. The claims were secured by Kleynerman's house, which had no value for the lien to attach, and thus was an unsecured claim. The Trustee filed a notice of abandonment, which included Kleynerman's house on March 28, 2019. The Trustee abandoned Kleynerman's house on April 25, 2019. Consequently, Smith's allowed secured claims did not receive any distributions from Kleynerman's estate. On the other hand, Glaser filed a proof of claim for $450,927.57, which was unsecured. Kleynerman's schedules listed multiple claims held by Glaser: (a) $85,000 from a money judgment secured by Kleynerman's home; (b) $38,500 from a money judgment, unsecured;

15

and (c) $1,177,274 from a business loan, unsecured. Glaser filed one unsecured claim, presumably with the foresight that he would not receive any money if Kleynerman's house was abandoned by the Trustee. Because Glaser scheduled his claim as unsecured, Glaser received a distribution from the bankruptcy estate, in fact Glaser received 100% of the funds distributed to unsecured claims. Because Smith filed his claims as secured, Smith received nothing. Accordingly, Goldstein should have filed proofs of claims as unsecured.

65.     Goldstein failed to object to the Trustee's notice of abandonment. In Smith's Motion to Issue Rule 2004 Subpoenas, Smith claimed, if Red Flag's government contract did cause Red Flag to have value, then "the Trustee abandoned the Red Flag equity interest…due to Kleynerman's failure to disclose the existence of the Government Contract." Smith argues that this could give the Trustee standing to revoke the abandonment. Kleynerman's objection stated, "In March 2019, the Trustee gave Smith and other creditor's notice of his intention to abandon Kleynerman's interest in Red Flag. Smith had another month to oppose the abandonment, but ignored it." Accordingly, Goldstein failed to object to the Trustee's notice of abandonment.

66.     Goldstein failed to object to the exemption of Kleynerman's Red Flag interest. Instead, Goldstein filed the Motion to Issue Rule 2004 Subpoenas, which the bankruptcy court denied. In its order, the court stated "Smith learned of the government contract almost nine months before filing the instant motion, and seven months before debtor received his discharge…Smith had plenty of time and access." Here, the court indicated that Smith (actually, Goldstein) had the requisite information he needed to challenge the valuation of Kleynerman's Red Flag interest. Goldstein failed to object to an exemption of $15,000 allowed by the statute for Red Flag rather than 100% of the value.

**EXHIBIT 1**

67.     Goldstein failed to request a revocation of discharge under 11 U.S.C. §§ 727(d)(1)

and (2).

*Seventh Circuit Court of Appeals*

68.     Smith appealed the discharge of Kleynerman, sought to overturn the Bankruptcy

Court's decision to reopen the Bankruptcy and avoid Smith's judgment lien.

69.     The Seventh Circuit denied Smith's request and pointed to the failures of his

attorneys: Goldstein:

> Having lost his argument that
> Kleynerman had committed fraud, Smith did not object either
> to the $0 valuation or the discharge.
> * * *
> Kleyn-
> erman claimed an exemption; the Trustee agreed with that $0
> valuation and abandoned the asset as worthless; Smith did
> not argue otherwise before the discharge was entered.
> * * *
> Rule 4003(b)(1) requires a party in interest to object to a
> claimed exemption within 30 days of the meeting of creditors.
> That meeting occurred on October 4, 2018, giving Smith until
> November 3 to object (unless he sought an extension under
> the terms of the Rule, as he did not). But Smith did not object
> then or at any other time before the bankruptcy court entered
> its discharge order on December 12, 2019. Nor did he seek ad-
> ditional information to facilitate an objection.
> * * *
>      During the main bankruptcy proceedings Smith tried and
> failed to persuade the judge that the $499,000 was not dis-
> chargeable. After that he was quiescent until the discharge.
> Smith next mounted an argument in state court. In February
> 2020, after the discharge had been entered, Smith sought per-
> mission from the bankruptcy judge to issue extensive

**EXHIBIT 1**
Case 2:25-cv-02008-LA     Filed 12/22/25     Page 19 of 30     Document 1-1

subpoenas that would (Smith said) yield information about the value of Kleynerman's interest in Red Flag. The bankruptcy judge deemed this a fishing expedition—worse, an exercise in harassment—and denied the requests. The district court concluded that this was not an abuse of discretion, and again we agree. It was too much, too late. Carefully targeted requests might have been appropriate, given the difference between Rule 4003(b) and Rule 4003(d), but Smith's blunderbuss requests were anything but carefully targeted.

Before the discharge, Smith knew that Kleynerman had received about $600,000 in income from Red Flag during 2016 and 2017, plus another $51,000 in 2018 before the bankruptcy began. These numbers were disclosed in Kleynerman's own schedules. Smith also had the financial statements for Alpha Cargo, the predecessor to Red Flag that ran the business when Kleynerman and Smith were on speaking terms. Smith could have used this information to contest Kleynerman's assertion that his interest in Red Flag was worth less than $15,000. If the bankruptcy judge had determined, in response to such an argument, that Smith needed more information, he could have proposed subpoenas then and there—and, if the bankruptcy judge said no, Smith could have appealed to the district court (from the final decision) and ultimately to us. But he did none of this. He put all of his eggs in one basket (the fraud objection to discharge) and let the valuation of Red Flag pass without objection. That left only Kleynerman's assessment, which the bankruptcy judge was entitled to accept, plus the blunderbuss post-discharge subpoenas, which were properly rejected.

Attached as **Exhibit A** is a copy of the Seventh Circuit Court's decision and is expressly incorporated herein by reference.

70.     Upon receipt of the Seventh Circuit Court's decision, Smith realized and understood that his legal counsel, Goldstein and its attorneys, had failed to properly represent his interests in numerous ways, to his damage and detriment.

18

*Summary of Goldstein's Errors and Omissions*

71.    In summary, as shown above, Goldstein's and its lawyers' failures, both in their professional duties and as expressly required under the subject retainer agreement, include the following:

(i) Failure to investigate and object to Kleynerman's designation as a business debtor;

(ii) Failure to object to Kleynerman's discharge;

(iii) Failure to properly file proofs of claims as unsecured and as secured by Kleynerman's interest in and distributions from Red Flag;

(iv) Failure to object to Trustee's notice of abandonment of Red Flag and the assessment of a $0 value;

(v) Failure to offer to purchase the Red Flag asset from the Trustee;

(vi) Failure to object to exemption of Kleynerman's Red Flag interest at 100% rather than $15,000;

(vii) Failure to request revocation of discharge under 11 U.S.C. § 727(d)(1);

(viii) Failure to request revocation of discharge under 11 U.S.C. § 727(d)(2);

(ix) Failure to timely question and investigate Kleynerman's future income and ability to pay creditors;

(x) Failure to file a motion to convert the case to a reorganization with payments to creditors;

(xi) Failure to timely question / challenge Kleynerman on valuations and other representations, including the valuation of Red Flag and the allowance of the Glaser claim;

(xii) Failure to ask for financial records in QuickBooks (native format) as suggested by the forensic accountant;

**EXHIBIT 1**

(xiii) Failure to timely draft proper subpoenas discovering Kleynerman's assets and Red Flag's valuation;

(xiv) Failure to file a motion for relief from stay to pursue the Charging Lien and abandonment of Kleynerman's interest in Red Flag; and

(xv) Various other acts and omissions.

72.     Goldstein represented they had the skill and expertise to adequately and competently represent Smith's interests, but failed in this regard.

73.     Smith relied on the representations of Goldstein, to his damage and detriment.

### *Damages*

74.     As a result of Goldstein's errors and omissions, Smith lost at least $499,000, interest thereon, unnecessarily paid fees for Goldstein's substandard legal services, paid substantial legal fees attempting to undo Goldstein's substandard legal services, among other damages.

75.     The cost to defend the Charging Order and judgment lien in the bankruptcy was approximately $240,000 in legal and professional fees.

76.     As a result of Goldstein's reliance on the representations of Goldstein and reliance on their ability to adequately and competently represent Smith's interests, Smith has suffered significant damages in an amount to be determined at trial.

### FIRST CAUSE OF ACTION:
### MALPRACTICE: BREACH OF CONTRACT

77.     Plaintiff incorporates by reference the above allegations as if set forth in full herein.

78.     The parties entered into a contract to, among other things, have Goldstein adequately and competently represent Smith's interests in receiving funds he should have received from Kleynerman.

79.     Defendants breached that contract by various errors and omissions outlined above.

20

80. Plaintiff complied with all of his obligations under the parties' agreement, including paying Defendants for their work.

81. Defendants' breaches of the contract has caused significant damages to Plaintiff in an amount to be determined at trial.

### SECOND CAUSE OF ACTION: MALPRACTICE/PROFESSIONAL NEGLIGENCE

82. Plaintiff incorporates by reference the above allegations as if set forth in full herein.

83. Defendants had a duty to perform legal services properly, including, but not limited to, have adequately and competently representing Plaintiff's interests in receiving funds he should have received from Kleynerman.

84. Defendants breached that duty in multiple ways, as outlined above.

85. Defendants' breaches caused damages to Plaintiff as described above.

86. Plaintiff is entitled to damages for Defendants' negligence in an amount to be determined at trial.

WHEREFORE for the reasons listed above, Plaintiff demands judgment as follows:

1. For compensatory damages in an amount to be determined at trial;

2. For disgorgement of all fees paid to Goldstein;

3. For costs and fees in bringing this action as provided by statute; and

4. For any and all other relief the Court deems just and equitable.

### JURY DEMAND

A jury demand of 12 is hereby demanded.

Dated this 31st day of October, 2025.

MALLERY sc
Attorneys for Plaintiff

By: *Electronically signed by Andrew G. Frank*
Andrew G. Frank, State Bar #1046021

21

MAILING ADDRESS
731 North Jackson Street, Suite 900
Milwaukee, WI 53202
414-271-2424 phone
414-271-8678 fax
afrank@mallerysc.com

22

**EXHIBIT 1**

In the

# United States Court of Appeals

### For the Seventh Circuit

---

No. 22-2947

IN THE MATTER OF:

GREGORY KLEYNERMAN,

*Debtor.*

APPEAL OF:

SCOTT SMITH

---

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 22-CV-162-JPS — **J.P. Stadtmueller**, *Judge.*

---

ARGUED SEPTEMBER 19, 2023 — DECIDED FEBRUARY 27, 2024

---

Before EASTERBROOK, WOOD, and KIRSCH, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Gregory Kleynerman and
Scott Smith fell out, and their business dissolved in acrimony.
Smith sued Kleynerman in Wisconsin and obtained a judg-
ment of $499,000, which the state's judiciary provided would
be secured by his membership interest in Red Flag Cargo Se-
curity Systems LLC. Kleynerman then filed for bankruptcy.

Smith contended in the bankruptcy that the state court's
judgment reflected Kleynerman's fraud and so could not be

2                                                    No. 22-2947

discharged. 11 U.S.C. §523(a)(4). The bankruptcy court re-
jected that contention. For his part, Kleynerman valued his in-
terest in Red Flag at $0 and invoked an exemption for prop-
erty worth $15,000 or less. (This state-law exemption, Wis.
Stat. §815.18(3)(b), is incorporated into federal bankruptcy
law by 11 U.S.C. §522(b)(3)(A).) Having lost his argument that
Kleynerman had committed fraud, Smith did not object either
to the $0 valuation or the discharge.

Smith was not done, however. When Kleynerman asked
the state court to deem the $499,000 judgment discharged,
Smith contended that, under Wis. Stat. §806.19(4), only debts
secured by real property can be avoided. The state's judiciary
agreed with Smith, which led Kleynerman to ask the bank-
ruptcy court to reopen the case and provide expressly that
both the $499,000 debt and the lien on Kleynerman's interest
in Red Flag no longer exist.

The bankruptcy court obliged, 638 B.R. 111 (Bankr. E.D.
Wis. 2022), and the district court affirmed, 647 B.R. 196 (E.D.
Wis. 2022). Security interests and other liens often pass
through bankruptcy unaffected, see *Johnson v. Home State
Bank*, 501 U.S. 78, 83 (1991), but there are exceptions—among
them one for assets exempt from execution. The effect of an
exemption is a matter of federal rather than state law. Kleyn-
erman claimed an exemption; the Trustee agreed with that $0
valuation and abandoned the asset as worthless; Smith did
not argue otherwise before the discharge was entered.

Under the Bankruptcy Code, "the debtor may avoid the
fixing of a lien on an interest of the debtor in property to the
extent that such lien impairs an exemption to which the
debtor would have been entitled under subsection (b) of this
section, if such lien is—(A) a judicial lien, other than a judicial

No. 22-2947                                                              3

lien that secures a debt of a kind that is specified in section
523(a)(5)". 11 U.S.C. §522(f)(1). The bankruptcy judge con-
cluded that Smith's interest was a "judicial lien" that could be
avoided because enforcing it would impair Kleynerman's ex-
emption, and the lien was not "a kind that is specified in sec-
tion 523(a)(5)" (which deals with domestic-support obliga-
tions). That's straightforward—if Red Flag really was worth
less than $15,000 when Kleynerman filed for bankruptcy.
(During the bankruptcy proceedings Red Flag landed a big
contract and may be worth a good deal today, but the filing
date is the time for valuation of an asset claimed as exempt.)

Smith's lead argument on appeal is that the bankruptcy
judge should not have reopened the proceeding to entertain
Kleynerman's request. Yet the bankruptcy judge had author-
ity: "A case may be reopened in the court in which such case
was closed to administer assets, to accord relief to the debtor,
or for other cause." 11 U.S.C. §350(b). All the court needed
was "cause", which the state judiciary's decision supplied. A
debtor who has cause for reopening cannot dilly-dally, but
Kleynerman sought reopening 70 days after the discharge's
entry and 36 days after the state judge's post-discharge deci-
sion. Smith has not cited any case deeming 70 days too long.
A court should exercise discretion under §350(b) without
causing needless prejudice to anyone, and the bankruptcy
judge ordered Kleynerman to pay the legal costs that Smith
had incurred in the post-discharge litigation in state court, so
that Smith would not suffer prejudice from the absence of an
express §522(f) clause in the original discharge. Our opinion
in *Redmond v. Fifth Third Bank*, 624 F.3d 793 (7th Cir. 2010), cat-
alogs these and other things for a bankruptcy judge to con-
sider. None was overlooked. Like the district judge we

4                                                    No. 22-2947

conclude that the bankruptcy judge did not abuse her discretion in reopening.

Smith's other appellate contention is that the bankruptcy judge refused to entertain his argument that Kleynerman's interest was worth more than $15,000. No one doubts that a bankruptcy judge must listen to such an argument. See Fed. R. Bankr. P. 4003(d). But *when* must the bankruptcy judge entertain it? The bankruptcy judge and district judge thought that the right time is before the discharge, not afterward, and we agree with that conclusion (with a qualification below). Rule 4003(b)(1) requires a party in interest to object to a claimed exemption within 30 days of the meeting of creditors. That meeting occurred on October 4, 2018, giving Smith until November 3 to object (unless he sought an extension under the terms of the Rule, as he did not). But Smith did not object then or at any other time before the bankruptcy court entered its discharge order on December 12, 2019. Nor did he seek additional information to facilitate an objection.

Rule 4003(d), which applies to proceedings under §522(f) to avoid liens, does not have a separate time limit. That leaves timing to the discretion of the bankruptcy judge. See *In re Schoonover*, 331 F.3d 575 (7th Cir. 2003). *Schoonover* rejects an argument that lienholders are subject to the same time limit as other creditors under Rule 4003(b). But bankruptcy judges can set and enforce time limits under Fed. R. Bankr. P. 9014.

During the main bankruptcy proceedings Smith tried and failed to persuade the judge that the $499,000 was not dischargeable. After that he was quiescent until the discharge. Smith next mounted an argument in state court. In February 2020, after the discharge had been entered, Smith sought permission from the bankruptcy judge to issue extensive

No. 22-2947                                                                 5

subpoenas that would (Smith said) yield information about
the value of Kleynerman's interest in Red Flag. The bank-
ruptcy judge deemed this a fishing expedition—worse, an ex-
ercise in harassment—and denied the requests. The district
court concluded that this was not an abuse of discretion, and
again we agree. It was too much, too late. Carefully targeted
requests might have been appropriate, given the difference
between Rule 4003(b) and Rule 4003(d), but Smith's blunder-
buss requests were anything but carefully targeted.

Before the discharge, Smith knew that Kleynerman had re-
ceived about $600,000 in income from Red Flag during 2016
and 2017, plus another $51,000 in 2018 before the bankruptcy
began. These numbers were disclosed in Kleynerman's own
schedules. Smith also had the financial statements for Alpha
Cargo, the predecessor to Red Flag that ran the business when
Kleynerman and Smith were on speaking terms. Smith could
have used this information to contest Kleynerman's assertion
that his interest in Red Flag was worth less than $15,000. If the
bankruptcy judge had determined, in response to such an ar-
gument, that Smith needed more information, he could have
proposed subpoenas then and there—and, if the bankruptcy
judge said no, Smith could have appealed to the district court
(from the final decision) and ultimately to us. But he did none
of this. He put all of his eggs in one basket (the fraud objection
to discharge) and let the valuation of Red Flag pass without
objection. That left only Kleynerman's assessment, which the
bankruptcy judge was entitled to accept, plus the blunderbuss
post-discharge subpoenas, which were properly rejected.

AFFIRMED

**EXHIBIT 1**                                                    **Exhibit A**

| STATE OF WISCONSIN | CIRCUIT COURT | MILWAUKEE |
|---|---|---|

FILED
10-31-2025
Anna Maria Hodges
Clerk of Circuit Court
2025CV009475
Honorable Jean Marie
Kies-45
Branch 45

Scott Smith vs. Goldstein McClintock LLLP et al

**Electronic Filing Notice**

Case No. 2025CV009475
Class Code: Money Judgment

MATTHEW E. CARLTON
1900 SOUTH 18TH AVENUE
WEST BEND WI 53095

Case number 2025CV009475 was electronically filed with/converted by the Milwaukee County Circuit Court office. The electronic filing system is designed to allow for fast, reliable exchange of documents in court cases.

Parties who register as electronic parties can file, receive and view documents online through the court electronic filing website. A document filed electronically has the same legal effect as a document filed by traditional means. Electronic parties are responsible for serving non-electronic parties by traditional means.

You may also register as an electronic party by following the instructions found at **http://efiling.wicourts.gov/** and may withdraw as an electronic party at any time. There is a fee to register as an electronic party. This fee may be waived if you file a Petition for Waiver of Fees and Costs Affidavit of Indigency (CV-410A) and the court finds you are indigent under §814.29, Wisconsin Statutes.

If you are not represented by an attorney and would like to register an electronic party, you will need to enter the following code on the eFiling website while opting in as an electronic party.

**Pro Se opt-in code: a50722**

Unless you register as an electronic party, you will be served with traditional paper documents by other parties and by the court. You must file and serve traditional paper documents.

Registration is available to attorneys, self-represented individuals, and filing agents who are authorized under Wis. Stat. 799.06(2). A user must register as an individual, not as a law firm, agency, corporation, or other group. Non-attorney individuals representing the interests of a business, such as garnishees, must file by traditional means or through an attorney or filing agent. More information about who may participate in electronic filing is found on the court website.

If you have questions regarding this notice, please contact the Clerk of Circuit Court at 414-278-4140.

Milwaukee County Circuit Court
Date: November 3, 2025

GF-180(CCAP), 11/2020 Electronic Filing Notice    **EXHIBIT 1**    §801.18(5)(d), Wisconsin Statutes
This form shall not be modified. It may be supplemented with additional material.
Case 2:25-cv-02008-LA    Filed 12/22/25    Page 30 of 30    Document 1-1